IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **CRISTI A. HOFFMAN**, as Executor of the Estate of John W. Hoffman, and **CRISTI A. HOFFMAN**, individually, **DESIGNED ALLOYS, INC.**, an Illinois corporation, **DESIGNED ALLOY PRODUCTS, INC.**, an Illinois corporation, and **ALLOY ROD PRODUCTS, INC.**, an Illinois Corporation, Plaintiffs/Counter-Defendants, v. **JAMES P. SUMNER** and **FRANK D. WINTER**, Defendants/Counter-Plaintiffs. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 05 C 7114 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs/Counter-Defendants Cristi Hoffman, Designed Alloys, Inc. ("DAI"), Designed Alloy Products, Inc. ("DAPI") and Alloy Rod Products, Inc. ("ARPI") have brought a joint motion under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(f) to strike and dismiss the amended counterclaims brought by defendants/counter-plaintiffs James Sumner ("Sumner") and Frank Winter ("Winter"). For the following reasons, I grant their motion in part and deny it in part.

I.

Plaintiffs originally brought suit against defendants seeking a declaratory judgment that defendants have no rights or interests

in DAI and no rights or claims against the plaintiffs. Plaintiffs also brought a state tort claim for conspiracy to commit unlawful conversion or theft. These claims arise from allegations that, prior to her husband John Hoffman's death, Cristi Hoffman and John Hoffman owned all the shares of common stock of DAI, DAPI, and ARPI as joint tenants with rights of survivorship. Plaintiffs allege that upon John Hoffman's death, Cristi Hoffman became the sole owner of all common stock in the plaintiff corporations. According to plaintiffs' complaint, the defendants contacted plaintiffs at some point and notified them that, pursuant to an executed "Buy-Sell and Trust Agreement" ("Buy-Sell Agreement"), John Hoffman had previously agreed with Sumner and Winter that each of them owned a third of the issued capital stock of DAI, and that upon John Hoffman's death his executor had to offer to sell to Sumner and Winter all of John Hoffman's shares in proportion to the percentage of total shares owned by Sumner and Winter. Plaintiffs allege that Sumner and Winter did not own any shares in DAI and that any Buy-Sell Agreement is not enforceable against them.

In response to this complaint, defendants have filed several counterclaims against the plaintiffs. Count I is a claim for declaratory judgment and mandatory injunction against DAI; John Hoffman's estate through his executor, Cristi Hoffman; and Cristi Hoffman individually. Count II is a claim for declaratory judgment and mandatory injunction against DAPI, ARPI, John Hoffman's estate

through Cristi Hoffman, and Cristi Hoffman individually. Count III is a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), against John Hoffman's estate through Cristi Hoffman as its executor. Count IV is a RICO conspiracy claim under 18 U.S.C. § 1962(d) against DAI, DAPI, ARPI, and John Hoffman's estate through Cristi Hoffman. Count V is a claim for common-law fraud against John Hoffman's estate through Cristi Hoffman. Count VI is a claim for breach of fiduciary duty against John Hoffman's estate through Cristi Hoffman. These claims arise out of defendants' allegations that, as reflected in plaintiff's complaint, under the Buy-Sell Agreement Sumner and Winter are each one-third shareholders of DAI. Further, defendants allege that for twelve years John Hoffman operated a corrupt organization that methodically attempted to rob Sumner and Winters of their ownership in DAI by "secretly siphoning off money and business opportunities from DAI, in favor of DAPI and ARPI" in order to deprive Winter and Sumner of the true value of their shares in DAI.

In support of these claims, defendants allege that John Hoffman and Sumner together decided to form a foundry company, and that based on that decision Hoffman incorporated DAI in the state of Illinois. After that formation, John Hoffman and Sumner invited Winter to join the new enterprise. Defendants allege that John Hoffman, Sumner and Winter orally agreed that John Hoffman would

3

manage DAI's day-to-day affairs and that Winter and Sumner would provide advice and services as necessary. Defendants contend that in mid-August 1993, John Hoffman, Winter and Sumner entered into a "Buy-Sell and Trust Agreement," a copy of which is attached to their counterclaims and which appears to be the same document referred to by plaintiffs as the Buy-Sell Agreement. Winter and Sumner allege that from mid-1993 to 2004, they both provided various information, advice and services to DAI and Hoffman, as set forth more specifically in their counterclaims. They allege that they provided these services without compensation in order to increase the value of the shares they own in DAI. According to the defendants' counterclaims, John Hoffman told Winter and Sumner that he had caused stock certificates to be issued reflecting their ownership interests in DAI, and he was holding those certificates in trust.

Defendants claim that between 1994 and 2003, John Hoffman engaged in a scheme to defraud Winter and Sumner of their rightful ownership of DAI. They allege he did this in part by siphoning off jointly-owned assets of DAI and using them to create DAPI and ARPI, of which he named himself and Cristi Hoffman as the sole shareholders; by not informing "numerous key employees and advisors" to DAI of Winter and Sumner's ownership interest in the company; and by not creating and holding in trust Winter and Sumner's DAI stock certificates.

II.

Plaintiffs' motion to dismiss defendants' counterclaims is brought under Federal Rules of Civil Procedure 12(b)(1) and (6). In assessing the motion to dismiss I must accept all well-pled facts in the counterclaims as true, and view the allegations in the light most favorable to the defendants. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Dismissal of their counterclaims is proper only if defendants can prove no set of facts to support them. *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002).

Plaintiffs' motion to strike under Federal Rule of Civil Procedure 12(f) is governed by a different standard. The motion to strike appears only to apply to Counts I and II of defendants' counterclaims. Under Rule 12(f), upon a motion by a party a court may strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions under Rule 12(f) are generally disfavored, although they may be granted if they remove unnecessary clutter from the case and serve to expedite, not delay. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Courts generally do not grant motions to strike unless the defect in the pleading causes some prejudice to the party bringing the motion. *See*

*Affiliated Capital Corp. v. Buck*, No. 94 C 1497, 1994 WL 691189, at *4 (N.D. Ill. Dec. 2, 1994).

### III.

Counts I and II of defendants' counterclaims bring claims for declaratory judgment and mandatory injunction pursuant to 28 U.S.C. §§ 2201 and 2202. Defendants bring Count I against DAI; John Hoffman's estate through his executor, Cristi Hoffman; and Cristi Hoffman individually. They bring Count II against DAPI, ARPI, John Hoffman's estate through Cristi Hoffman, and Cristi Hoffman individually. Plaintiffs have moved to strike these counts under Rule 12(f) as duplicative, and further argue that I should dismiss these counts because defendants have not stated a claim for either a declaratory judgment or a mandatory injunction.

### A. Motion to Strike as Duplicative

In plaintiffs' view, I should strike these counts because they are duplicative of plaintiffs' own claim for declaratory relief. Plaintiffs' claim for a declaratory judgment asks this court to "determine and declare that [Sumner and Winter] have no rights or interest in [DAI] and have no rights or claims against the Plaintiffs arising out of the purported Agreement." Defendants' claims for declaratory judgment and mandatory injunction seek a judgment that the Buy-Sell Agreement is valid and enforceable, that Winter and Sumner each own one-third of the stock of the plaintiff companies, that Cristi Hoffman is bound by the Buy-Sell Agreement,

6

and that she is obligated to certain terms of the Buy-Sell Agreement. Clearly their claims go beyond the scope of what is sought by the plaintiffs, so they are not duplicative of one another.[1] Therefore, I decline to strike these counts from defendants' counterclaims.

B. Failure to Allege Immediacy and Reality

In the alternative, according to plaintiffs, defendants have failed to state a claim because they have not specifically alleged that the declaratory judgment they seek is "of sufficient immediacy and reality to warrant declaratory judgment." To seek a declaratory judgment, a party must show that there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *In re VMS Sec. Litig.*, 103 F.3d 1317, 1327 (7th Cir. 1996) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Courts have previously addressed the immediacy and reality requirement in addressing claims that they lack subject matter jurisdiction over a claim because there is no dispute of sufficient immediacy and reality to warrant a court issuing a declaratory judgement. *See,*

---

[1] In plaintiffs' reply brief, they raise the additional argument that defendants' claim is improper under the Declaratory Judgment Act since it is more properly brought as a breach of contract action (for breach of the Buy-Sell Agreement). Setting aside the merits of this argument, plaintiffs' first raised this argument in their reply brief, so it is waived. *See United States v. Kelley*, 446 F.3d 688, 692 (7th Cir. 2006).

7

*e.g.*, *Oneida Tribe of Indians v. Wisconsin*, 951 F.2d 757, 760 (7th Cir. 1991). Plaintiffs here do not appear to allege, however, that there is not actually sufficient immediacy such that defendants lack standing to bring their counterclaims; obviously plaintiffs believe that there is sufficient immediacy as they have brought their own motion for a declaratory judgment to resolve some of these same issues.

Given this, and viewing defendants' allegations in the light most favorable to them, I find that defendants' claims for a declaratory judgement satisfy federal notice pleading requirements; they put plaintiffs on notice of the declaratory judgment they seek. Plaintiffs are absolutely incorrect that notice pleading requires defendants to "plead the elements of their claim" – the Seventh Circuit has explicitly stated that a claimant "need not allege facts corresponding to each 'element' of a statute" or "identify, and plead specifically to, each ingredient of a sound legal theory." *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (internal citations omitted). Instead, defendants need do no more than "narrate a grievance simply and directly" so that the plaintiffs know of what they have been accused. *Id.* Defendants have done that here with respect to their declaratory judgment claims, so I will not dismiss Counts I and II.[2]

---

[2]Plaintiffs also contend that defendants' claim for mandatory injunction fails because defendants' counterclaims does not "mention" the elements for a mandatory injunction. Plaintiff also

IV.

Plaintiffs also contend that I should dismiss defendants' claims under RICO.  They contend that RICO claims do not survive John Hoffman's death, that defendants lack standing to bring those claims, and that defendants have not sufficiently plead their claims under Federal Rule of Civil Procedure 9(b).  Further they contend that defendants' RICO conspiracy claim (Count IV of defendants' counterclaims) is dependent upon the showing of a substantive RICO violation (Count III), and because Count III does not survive, Count IV does not survive.  For the reasons stated below, I grant plaintiffs' motion to dismiss Counts III and IV.

   A.  Survival of Claims beyond John Hoffman's Death

Plaintiffs' main argument why I should dismiss Counts III and IV of defendants' counterclaims is that neither claim survived John Hoffman's death.  Count III is a RICO claim under 18 U.S.C. § 1962(c) against John Hoffman's estate through Cristi Hoffman as its executor.  Defendants allege that John Hoffman, DAI, DAPI and ARPI were an enterprise, as defined in 18 U.S.C. § 1961(4), and that each of the plaintiffs participated in the conduct of that enterprise through a pattern of racketeering activity in violation

---

erroneously claims that, to state a claim for a mandatory injunction, defendants must "plead" certain elements.  The case they cite does not support that proposition and, as discussed above, neither do the requirements of federal notice pleading.

9

of 18 U.S.C. § 1962(c).[3]  The parties do not dispute that John Hoffman is deceased.

As both parties recognize, there is a dispute among federal courts whether civil RICO claims survive the death of a party.  The Seventh Circuit has not directly ruled on this issue.  The survival of federal statutory causes of action is a question of federal common law in the absence of a specific federal statutory directive, *see Smith v. No. 2 Galesburg Crown Fin. Corp.*, 615 F.2d 407, 413 (7th Cir. 1980) (internal citations omitted), as is the case with RICO.  The long-standing federal common law rule is that actions for penalties do not survive the death of the defendant, but remedial actions do.  *See, e.g.*, *Ex parte Schreiber*, 110 U.S. 76, 80 (1884).  The Seventh Circuit has endorsed a three-part test to determine whether, for purposes of survival, a federal statutory action is penal.  *See Smith*, 615 F.2d at 414 (examining whether Truth in Lending Act claim survived the death of the plaintiff) (citing *Murphy v. Household Fin. Corp.*, 560 F.2d 206, 209 (6th Cir. 1977)).  Under the Seventh Circuit's test, a court should determine whether (1) the purpose of the action is to redress individual wrongs or wrongs to the public; (2) recovery runs to the individual or to the public; and (3) the authorized recovery is wholly disproportionate to the harm suffered.  *Id.*

---

[3]Although the defendants contend that DAI, DAPI and ARPI were part of the enterprise, their claim is only against John Hoffman's estate through its executor Cristi Hoffman.

Applying this test, numerous other courts in the Northern District of Illinois have determined that RICO claims do not survive the death of the defendant. *See, e.g.*, *Ball v. Marshall Field V*, No. 90 C 4383, 1993 WL 101485, at *9 (N.D. Ill. Apr. 2, 1993) (collecting cases); *Washburn v. Brown*, No. 81 C 1475, 1988 WL 130021, at *3 (N.D. Ill. Nov. 23, 1988); *First Interstate Bank v. Nat'l Republic Bank*, No. 80 C 6401, 1985 WL 1118, at *3 (N.D. Ill. July 26, 1985). In *First Interstate Bank*, the court concluded that only the second factor of the *Smith* test militated in favor of finding RICO to be remedial rather than punitive, since the purpose of treble damages under RICO was to encourage private parties to bring suit against organized crime and thereby "vindicate the public good by thwarting and deterring organized crime." *First Interstate Bank*, 1985 WL 1118, at *3. The court in *First Interstate Bank*, as other courts in the Northern District have noted, concluded that the treble damages allowed by RICO are punitive and not purely remedial. *Id.*; *see also Ball*, 1993 WL 101485, at *9.

Defendants respond by arguing that the courts in the Northern District of Illinois are in the minority, and that the vast majority of federal courts addressing this issue have concluded that civil RICO is remedial, not punitive. *See, e.g.*, *Faircloth v. Finesod*, 938 F.2d 513, 518 (4th Cir. 1991) (internal citations omitted) ("The district courts that have addressed the matter,

11

except the Northern District of Illinois, have concluded that civil RICO claims do survive."). Defendants urge me to adopt the reasoning of the sole appellate court to address this issue, the Fourth Circuit in *Faircloth*, in which the Fourth Circuit determined that, although the civil RICO statute was not purely remedial, Congress explicitly declared its purpose to be "remedial" and asked it be liberally construed to effect this purpose. *Id.* at 518 (internal citations omitted). However, while acknowledging that other courts have reached a different conclusion, applying the test in *Smith* I reach the same conclusion as the other courts within the Northern District. Under the test set forth in *Smith*, I agree that the purpose of civil RICO is not only to redress individual wrongs, but also wrongs on the public; and the purpose of civil RICO's treble damages is to motivate individuals to vindicate the public good by bringing a private suit. *See First Interstate Bank*, 1985 WL 1118, at *3. It is true that recovery runs to the individual plaintiff and not the public, but the treble damages civil RICO affords are wholly disproportionate to the individual harm suffered. *See id.* Therefore, I grant plaintiffs' motion to dismiss Count III of defendants' counterclaims.

B. RICO Conspiracy Claim

Count IV of defendants' counterclaims is a civil RICO conspiracy claim under 18 U.S.C. § 1962(d) against DAI, DAPI, ARPI, and John Hoffman's estate through Cristi Hoffman. For the reasons

stated above, I dismiss the conspiracy claim against John Hoffman's estate since that claim does not survive his death. This still leaves the question, however, of whether I should dismiss Count IV against DAI, DAPI, and ARPI. Plaintiffs argue that I should dismiss Count IV because defendants cannot establish a substantive RICO claim. They contend that this is so because defendants lack standing and have failed to plead their substantive RICO claim with specificity under Rule 9(b).

I agree that defendants lack standing to pursue their claims as presently pled, so I need not address whether defendants have complied with Rule 9(b). As plaintiffs argue, and as defendants concede, civil RICO claims for diminished share value and lost business opportunities are owned by the corporation, so individual shareholders have no standing to bring them. *See, e.g.*, *Sears v. Levin*, 912 F.2d 889, 892 (7th Cir. 1990) (internal citations omitted). Here, Sumner and Winter, as purported individual shareholders of DAI, have brought a civil RICO claim against John Hoffman's estate (and a separate RICO conspiracy claim that DAI, DAPI and ARPI conspired with Hoffman) alleging that John Hoffman conducted an enterprise through the pattern of racketeering activity that affected interstate commerce in violation of 18 U.S.C. § 1962(c). Defendants also specifically allege that as a result Winter and Sumner "have been injured in their business and property . . . in that significant assets belonging to Winter and

Sumner have been embezzled out of DAI and into DAPI and ARPI, as well as business opportunities lost to DAI that have been transferred to DAPI and ARPI." This is a claim for diminished share value and lost business opportunities.

Defendants respond by claiming that, although they agree that claims for diminished share value and lost business opportunities are not theirs to bring individually, they have alleged additional individual damages, namely that plaintiffs made false and fraudulent statements to Sumner and Winter to induce them to "contribute to the success of DAI and indirectly and unknowingly the success of DAPI and ARPI, without compensation." However, defendants only make this allegation in paragraph 83 of their counterclaims, in the context of their common-law fraud claim (Count V). This allegation is not incorporated into their civil RICO claim. It may be that they have individual damages to plead under RICO, but they have not made them here. Accepting all well-pled facts in the counterclaims as true, and viewing the allegations in the light most favorable to the defendants, defendants have not pled that plaintiffs' alleged violations of RICO caused them individual harm. Therefore, I find that defendants have not stated a substantive RICO claim, and accordingly dismiss Count IV of defendants' counterclaims.

V.

Raising similar arguments as they raise to argue that I should dismiss defendants' RICO claims, plaintiffs contend that I should dismiss defendants' claims for common-law fraud. Count V of defendants' counterclaims is a claim for common-law fraud against John Hoffman's estate through Cristi Hoffman. Specifically, defendants claim that John Hoffman made false and fraudulent statements, including (1) repeatedly stating that he would make Winter and Sumner equal owners in the DAI venture; (2) between April 1993 and January 2005, representing to Winter and/or Sumner that he had caused stock certificates to be issued regarding their ownership interests in DAI, and that he was holding those certificates in trust; (3) "both prior to and subsequent to learning of his illness" representing to Sumner that he understood his obligations to Sumner and Winter and would arrange for them to purchase their shares of DAI stock. Plaintiffs contend that I should dismiss this claim because defendants lack standing to bring it and because it fails to plead fraud with particularity. I agree and dismiss Count V.

A. Standing to Bring Fraud Claims

Plaintiffs' first argue that defendants lack standing to bring their fraud claims because they allege injuries to the company (loss of share value) that do not belong to individual shareholders. Under Illinois law, shareholders alleging injury to

15

the corporation as a result of fraud must bring their claims as a shareholder derivative action. *See, e.g.*, *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 160-61 (7th Cir. 1996) (explaining Illinois law on shareholder claims). Defendants acknowledge that, to the extent that they claim injury to the corporation, they must amend their complaint to bring their claim as a shareholder derivative action. To the extent defendants allege injury to the corporation, I dismiss their common-law fraud claim. However, as with their RICO claim above, they argue that they have alleged individual injury as well, specifically that John Hoffman made false representations to induce them to provide assistance to DAI without compensation, such that they suffered individual monetary losses as a result. This is an individual harm that defendants do have standing to bring, so I cannot dismiss that portion of defendants' claim on the basis of standing.

    B.    Failure to Plead Fraud with Particularity

Plaintiffs respond that I should also dismiss Count V because it fails to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that averments of fraud be stated with particularity. To satisfy this particularity requirement, defendants must state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v.*

16

*Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (interpreting Rule 9(b) to require claimants to state "the who, what, when, where, and how: the first paragraph of any newspaper story").

Here, plaintiffs argue that defendants have not met the particularity requirement. Taking the three misrepresentations that defendants have pled, I agree. Defendants allege that John Hoffman repeatedly stated that he would make Winter and Sumner equal owners in the DAI venture, but they do not allege the time, place, or method of communication of these purported misrepresentations. Defendants allege that between April 1993 and January 2005, John Hoffman represented to Winter and/or Sumner that he had caused stock certificates to be issued regarding their ownership interests in DAI, and that he was holding those certificates in trust, but they do not allege the specific time, place, or method of communication of these misrepresentations. Finally, defendants allege that "both prior to and subsequent to learning of his illness" John Hoffman represented to Sumner that he understood his obligations to Sumner and Winter, but they do not allege the time, place, or method of this purported misrepresentation. Although these claims might, as defendants contend, generally put plaintiffs on notice of the

17

misrepresentations at issue, they do not meet the requirements of Rule 9(b). Therefore, I grant plaintiffs' motion to dismiss Count V of defendants' counterclaims.

VI.

Finally, plaintiffs argue that this court lacks subject matter jurisdiction over defendants' breach of fiduciary duty claim because it seeks assets from John Hoffman's estate. Count VI is a claim for breach of fiduciary duty against John Hoffman's estate through Cristi Hoffman. It alleges that John Hoffman breached his duty as the trustee of Winter and Sumner's stock certificates and consequently seeks monetary damages from John Hoffman's estate. I disagree with plaintiffs and therefore deny their motion to dismiss Count VI.

Under the probate exception to federal courts' subject matter jurisdiction, as clarified in *Marshall v. Marshall*, 126 S. Ct. 1735 (2006), federal courts may not exercise subject matter jurisdiction over a claim if their exercise of jurisdiction would disturb or affect "the possession of property in the custody of a state court." *Id.* at 1748 (quoting *Markham v. Allen*, 326 U.S. 490, 494 (1946)). The exception also "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Marshall*, 126 S. Ct. at 1748. In plaintiffs' view, this prevents me from adjudicating a claim that could result in a judgement for Sumner and Winter against John

Hoffman's estate. However, entering a judgment against the estate does not "dispose of property" in the custody of a state probate court; it does not exercise jurisdiction over the estate's property. As the Supreme Court previously noted in *Markham*, and recognized again in *Marshall*, a federal court "may exercise its jurisdiction to adjudicate rights" in property in possession of a state court "where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." *Markham*, 326 U.S. at 494. This is precisely what this judgment seeks – to issue a monetary judgment against John Hoffman's estate that does not interfere with the state court's possession of John Hoffman's assets except that the state court might need to recognize Sumner and Winters' claim against the estate.[4] For this reason, I deny plaintiffs' motion to dismiss this claim.[5]

---

[4] In *Markham* the Supreme Court further noted "a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." 326 U.S. at 494 (internal quotations omitted).

[5] In their reply defendants also state that they unintentionally omitted from their counterclaims a demand that, in the event I conclude that John Hoffman should have held the stock certificates for the benefit of Winter and Sumner, I order that the certificates be held in constructive trust for their benefit.

VII.

For the reasons stated above, I deny plaintiffs' motion to strike Counts I and II of defendants' counterclaims, and deny their motion to dismiss Counts I, II, and VI.  I grant their motion to dismiss Counts III, IV and V of defendants' counterclaims.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: March 14, 2007

---

Defendants state that they intend to amend their complaint to add this demand.  Such a demand might require me to exercise jurisdiction over a piece of property (the certificates, if they exist) that are within the jurisdiction of the probate court as part of John Hoffman's estate.

20