# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **CRISTI A. HOFFMAN**, individually and as Executor of the Estate of John W. Hoffman, **DESIGNED ALLOYS, INC.**, an Illinois corporation, **DESIGNED ALLOY PRODUCTS, INC.**, an Illinois corporation, and **ALLOY ROD PRODUCTS, INC.**, an Illinois Corporation,<br><br>Plaintiffs/Counter-Defendants,<br><br>v.<br><br>**JAMES P. SUMNER** and **FRANK D. WINTER**,<br><br>Defendants/Counter-Plaintiffs | No. 05 C 7114 |

## MEMORANDUM OPINION AND ORDER

On January 19, 2005, John W. Hoffman ("John Hoffman") passed away after suffering from cancer. His death left a dispute between his widow Cristi A. Hoffman ("Cristi Hoffman") and James P. Sumner ("Sumner") and Frank D. Winter ("Winter") over who controlled the company, Designed Alloys, Inc. ("DAI"), that he left behind. Cristi Hoffman contends that she and John Hoffman held all the shares of DAI in joint tenancy, so that following his death these shares passed immediately to her. Winter and Sumner claim that they are also shareholders of DAI and that they had an agreement with John Hoffman that after his death his estate would sell his shares in DAI to them. This basic dispute between the parties has led to both sides filing multiple claims against the other. Now

before me are four motions: a motion by Cristi Hoffman, DAI, Designed Alloy Products, Inc. ("DAPI") and Alloy Rod Products, Inc. ("ARPI") to dismiss Counts IV and VI of Sumner's and Winter's second amended counterclaims; a motion by Cristi Hoffman for summary judgment on all of Sumner's and Winter's second amended counterclaims and on Count II of her own complaint; a motion by DAI, DAPI and ARPI for summary judgment on Counts I and II of their complaint and Counts I and II of the second amended counterclaims; and a motion by Winter and Sumner for summary judgment on Count II of plaintiffs' complaint.  I grant plaintiffs' motions for summary judgment and enter judgment in their favor.

I.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Steen v. Myers*, 486 F.3d 1017, 1021 (7th Cir. 2007) (citing FED. R. CIV. P. 56©).  If the moving party meets this burden, the non-moving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial.  *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir. 2006) (citing FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990)).  The existence of merely a scintilla of evidence in support of the non-moving party's

position is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

The relevant undisputed facts are as follows:[1] Cristi Hoffman is a citizen of Illinois, and DAI, DAPI and ARPI are each Illinois corporations.[2] John Hoffman passed away on January 19, 2005. Cristi Hoffman was appointed the executor of his estate.

---

[1] Winter and Sumner have violated the local rule governing summary judgment motions, Local Rule 56.1, in numerous ways. Winter and Sumner's response to plaintiffs' statement of material facts contains numerous denials that do not reference an affidavit, specific part of the record, or other supporting material, a violation of Local Rule 56.1(b)(3)(B). Further, Winter and Sumner's response to plaintiffs' motions for summary judgment is replete with purported facts not referenced in its response to plaintiffs' statement of material facts or its own extremely short (6 statements) statement of material fact. The inclusion of additional facts in a memorandum responding to a motion for summary judgment "is insufficient to put those facts before the [c]ourt." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995)). I will not consider any facts put forward by Winter and Sumner that are not included in their responses to plaintiffs' statement or in their own statement of facts.

[2] The parties present no facts about these corporations, although Winter and Sumner do contend, without an appropriate factual showing, that these are "spin-offs" of DAI.

A. Incorporation and Stock Ownership of DAI

On April 13, 1993, John Hoffman incorporated DAI by filing DAI's articles of incorporation with the Illinois secretary of state; John Hoffman signed the articles of incorporation the day before. DAI's board of directors approved its bylaws on April 20, 1993.[3] He recorded the articles of incorporation with the DuPage County recorder of deeds on April 27, 1993. DAI's articles of incorporation show that the board of directors authorized 10,000 shares of common stock, and that DAI issued 250 shares of this stock for consideration of $2,500.00. Cristi Hoffman has presented a DAI stock certificate dated April 13, 1993, issuing 250 shares of DAI stock to John and Cristi Hoffman "as joint tenants with right of survivorship." Winter and Sumner do not dispute that DAI issued this stock certificate on or about April 13, 1993.[4] Cristi Hoffman has also presented a DAI "Preorganization Subscription

---

[3] Sumner and Winter deny this, stating that Cristi Hoffman admitted in her deposition that although she was a board member, John Hoffman unilaterally ran the board and Cristi Hoffman merely signed whatever needed to be signed. Her deposition does not support this denial. Cristi Hoffman testified that her understanding of her role as vice-president was that whenever anything needed to be signed in the attorney's office, she had to be there. She testified there were no annual meetings, and when asked several questions about corporate governance of DAI she admitted that she did not know the answer. Regardless, neither side has presented any documents showing that the bylaws were not approved on this date, or that there were any changes to the bylaws between April 20, 1993 and the date of John Hoffman's death.

[4] The DAI stock transfer register confirms the issuance of Stock Certificate Number 1 and also shows no changes to the issuance of these shares of DAI stock until after Hoffman's death.

4

Agreement" dated April 6, 1993 showing that John and Cristi Hoffman are subscribed, as joint tenants with right of survivorship, to 250 shares of common stock of DAI for $2,500.00. Winter and Sumner also do not dispute that according to DAI balance sheets prepared in 1996 and 1998, DAI's "paid-in" capital for common stock remained at $2,500.00 from 1993 until John Hoffman's death in 2005, and that no other stock certificates, shares of common stock, or any other stock were issued by DAI before John Hoffman's death. DAI's corporate records do not show any shares of DAI stock were ever issued to Sumner or Winter, or to someone as trustee for Sumner or Winter. Winter and Sumner admit they have never possessed stock certificates.

### B. Sumner's and Winter's Involvement in DAI and the Buy-Sell Agreement

From 1988 through 1994, Sumner was a full-time employee of First Mississippi Steel, Inc. ("First Mississippi Steel"). He did not make any cash or money payment in consideration for DAI stock. Sumner testified that in exchange for 250 shares of stock in DAI he agreed "to make [DAI] a success" and that he performed services "from the very get-go," "from the time the stock gets issued" and "from the time the company started." Sumner never disclosed DAI stock as an asset when he applied for financing or credit.

In his deposition, Sumner testified that prior to the official incorporation of DAI, he had an oral agreement with John Hoffman that they would be equal owners in the new company to help put it

5

together, and that in return for being an equal owner Sumner would help Hoffman by providing services to the company. At some point before August of 1993, Sumner contacted a friend who was a lawyer in Alabama and told him he needed his help drafting a written agreement that would reflect his oral agreement with Hoffman.

In May or June of 1993, Sumner testified he went to Winter, who was then his boss at First Mississippi Steel, to inform him of his agreement with John Hoffman and to see if Winter wanted to be involved. Winter testified that he did. His understanding was that he would provide technical assistance in the business. In his deposition, Winter testified that John Hoffman later asked him to purchase shares in DAI, and he did so by writing a $2,500 check, which he sent to John Hoffman.[5] Winter also testified that in discussions John Hoffman promised Winter that if Winter helped him with DAI, he would have shares in DAI issued to Winter. Winter never disclosed any ownership interest in DAI when paying his individual taxes or when applying for personal financing or credit.

Winter and Sumner contend that they had a written agreement with John Hoffman concerning the disposition of their respective shares in DAI. Winter and Sumner have presented a copy of this purported agreement, labeled "Designed Alloys, Inc. Buy-Sell and

---

[5]Winter produced a bank statement showing that he wrote a $2,500 check on August 9, 2003, and that his bank withdrew $2,500 out of his account to cover the check, but his records do not indicate what the check was for, who the payee was, and when and where the check was cashed.

6

Trust Agreement" (the "Buy-Sell Agreement"), attached as Exhibit 1 of their exhibits in opposition to plaintiffs' motions for summary judgment. In the recitals of the Buy-Sell Agreement (labeled "Purposes") the Buy-Sell Agreement states:

> WHEREAS, the stockholders own all of the issued capital stock of DESIGNED ALLOYS, INC., an Illinois corporation, with principal offices located at Naperville, Illinois (hereinafter called the corporation) as follows:
>
> John Hoffman     - 250 shares
>
> James P. Sumner  - 250 shares
>
> Frank Winter     - 250 shares

Section I provides that if any of the shareholders wants to dispose of his stock during his life, he must first give written notice to the other stockholders and allow them 30 days to purchase the stock at a price determined by the Buy-Sell Agreement. Section II provides:

> Upon the death of the stockholder first to die, each surviving stockholder shall have the right to purchase, and the executor or administrator (hereinafter called the legal representative) of the deceased stockholder shall offer to sell to each surviving stockholder, that proportionate number of the shares of stock of the corporation owned by the deceased at the time of his death as the number of shares owned by such survivor bears to the total number of shares owned by all the surviving stockholders, for the price and upon the terms and conditions herein stipulated, including the timing, proportionate offer and ultimate disposal provisions hereinabove.

Section IV of the Buy-Sell Agreement is labeled "Rights and Duties of Trustee" and states:

> Stockholder Hoffman (hereinafter called the Trustee) agrees to accept stock certificates in the name of "John Hoffman, Trustee under Agreement dated August __, 1993", one such stock certificate for 250 shares for the benefit of stockholder James P. Sumner, and one such certificate for 250 shares for the benefit of stockholder Frank Winter. Such certificates are to be held strictly for the benefit of stockholders Sumner and Winter, and the Trustee shall not independently vote, sell or do anything affecting the shares represented by such certificates without the direct instruction of the respective owners or their legal representatives, nor shall the Trustee purchase additional shares offered under the buy-sell provisions hereof unless specifically directed to do so by the respective owners or their legal representatives. It is specifically understood that such shares are separately owned by Sumner and Winter, and can be voted, instructed or otherwise directed entirely independently of one another.
>
> The Trustee agrees to hold safely the certificates of stock deposited with him under this agreement, subject thereto, but shall be under no duty or obligation not stated herein as to any such certificates. The Trustee further agrees to perform his duties hereunder without compensation.

Section VIII provides:

> This agreement shall be binding not only upon the parties individually but also upon their respective heirs, executors, administrators, successors and assigns. The parties agree for themselves and their heirs, executors, administrators, successors and assigns to execute any instruments and to perform any acts which may be necessary or proper to carry out the purposes of the agreement.

The Buy-Sell Agreement also provides that it is to be governed by the laws of the state of Illinois. It contains a Section X, a "Conclusion" section that contains signature lines for John Hoffman, Winter and Sumner. A signature appearing to be the signature of each is included on a signature line above the name of each signatory. The signature page is notarized but not dated. Winter testified that to the best of his recollection he and Sumner signed the Buy-Sell Agreement in front of a notary, then sent the copies to John Hoffman for his signature, and then John Hoffman later sent him a signed notarized copy. Sumner testified that he never received a signed copy from John Hoffman.

Sumner and Winter each received a group of DAI corporate documents from DAI's attorney around June of 1993. Both understood that they had not received copies of DAI stock certificates and both received documents indicating that John and Cristi Hoffman held 250 shares of DAI stock in joint tenancy with right of survivorship. Both also knew of John Hoffman's illness before he passed away.

## C. The Parties' Claims

Plaintiffs originally brought a two-count complaint in state court (1) requesting a declaratory judgment that defendants have no rights or interests in DAI and no rights or claims against the plaintiffs (Count I), and (2) bringing a state law tort claim for conspiracy to commit unlawful conversion or theft (Count II). In

9

response, defendants removed plaintiffs' state court action to federal court under 28 U.S.C. § 1441.

Defendants then filed counterclaims against plaintiffs, the latest version of which are their second amended counterclaims for (1) a declaratory judgment against DAI, DAPI, ARPI, John Hoffman's estate, and Cristi Hoffman individually and as executor to John Hoffman' estate, that the Buy-Sell Agreement is valid and enforceable; Winter and Sumner each own 1/3 of DAI's stock and 1/3 of the DAPI and ARPI; Cristi Hoffman as executor of John Hoffman's estate and as a successor in interest to John Hoffman is bound by the terms of the Buy-Sell Agreement; and Cristi Hoffman is obligated under the Buy-Sell Agreement to determine the value of DAI stock, determine the value of DAPI and ARPI, and sell the stock and ownership interest of John Hoffman to Winter and Sumner (Counts I and II); (2) breach of contract against John Hoffman's estate (Count III); (3) common-law fraud against John Hoffman's estate (Count IV); (4) breach of fiduciary duty against John Hoffman's estate (Count V); and (5) a shareholder derivative action against John Hoffman's estate and Cristi Hoffman individually and as executor of John Hoffman's estate (Count VI).

II.

Winter and Sumner seek a declaratory judgment against all plaintiffs that (1) the Buy-Sell Agreement is valid and enforceable; (2) Winter and Sumner each own 1/3 of DAI's stock and

10

1/3 of DAPI and ARPI; (3) Cristi Hoffman as executor of John Hoffman's estate and as a successor in interest to John Hoffman is bound by the terms of the Buy-Sell Agreement; and (4) Cristi Hoffman is obligated under the Buy-Sell Agreement to determine the value of DAI stock, determine the value of DAPI and ARPI, and sell the stock and ownership interest of John Hoffman to Winter and Sumner.

Winter and Sumner first seek a declaration that the Buy-Sell Agreement is valid and enforceable. The parts of the Buy-Sell Agreement at issue are whether it establishes that Winter, Hoffman and Sumner each own 250 shares in DAI; and whether John Hoffman's executor was obligated, on John Hoffman's death, to offer his shares in DAI for sale to Winter and Sumner by determining the value of DAI stock and selling the stock and ownership interest of John Hoffman to Winter and Sumner.

The parties agree that the Buy-Sell Agreement contains a choice of law provision that it is to be interpreted under Illinois law. Under Illinois law, the interpretation of an unambiguous contract is a question of law. *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004) (citation omitted). To determine a party's intent under a contract, I first look solely at the language of the contract where the contract's terms are unambiguous, and only consider evidence of the parties' intent where the language of the contract is ambiguous. *See, e.g.*, *Much*

11

*v. Pac. Mut. Life Ins. Co.*, 266 F.3d 637, 643 (7th Cir. 2001) (citations omitted); *Taracorp Inc. v. NL Indus., Inc.*, 73 F.3d 738, 743 (7th Cir. 1996) (citations omitted). The consideration of extrinsic evidence to interpret an ambiguous contract is a question of fact. *Taracorp*, 73 F.3d at 743 (citations omitted).

Hoffman and Sumner contend that the Buy-Sell Agreement demonstrates that they each own 250 shares in DAI, and that John Hoffman owned 250 shares in DAI. The recitals section of the Buy-Sell Agreement presumes that John Hoffman, Winter and Sumner each own 250 shares of DAI stock. It then sets forth an agreement between the parties to the Buy-Sell Agreement about the disposition of those shares should one person pass away or desire to sell his shares during his lifetime. Defendants argue that the fact that the Buy-Sell Agreement presumes that Hoffman and Sumner own shares is evidence of their ownership. Under Illinois law, preambles or introductory parts of an agreement are not considered to be part of the agreement. *Wall v. Chicago Park Dist.*, 378 Ill. 81, 92, 37 N.E.2d 752, 757 (1941) (citation omitted). However, "the preliminary recitals of an agreement become binding when so referred to in the operative portion of the instrument as to show a design they should form a part of it." *Wall v. Chicago Park Dist.*, 378 Ill. 81, 92, 37 N.E.2d 752, 757-58 (1941). In *Wall*, the Illinois Supreme Court considered a contract stating that "in consideration of the 'premises' and the mutual agreements of the

12

parties, and [one party] in consideration of the performance by the commissioners of Lincoln Park, of the 'agreements and conditions herein contained,' promised to convey riparian rights." *Id.* at 91, 37 N.E.2d at 757. The Illinois Supreme Court determined that the 'premises' mentioned in the contract were "the preceding recitals as to the preparation and purpose of the commissioners" to make certain improvements in the park in exchange for riparian rights. *Id.* Therefore, because the recitals were referred to in the operative part of the contract as consideration for the conveyance of riparian rights, the Supreme Court determined that the improvements to the park were part of the operative part of the contract. Here, the Buy-Sell Agreement does not show a design that the recitals should form an operative part of the contract. The Buy-Sell Agreement is premised on the recital that Winter, Sumner and John Hoffman each own 250 shares, but the recital does not define any of the parties' obligations or set forth any consideration.

This does not mean that I should ignore the fact that the recital exists. Its inclusion in the Buy-Sell Agreement means something. The Restatement Second of Contracts provides that "[a] recital of fact in an integrated agreement may be shown to be untrue." RESTATEMENT (SECOND) OF CONTRACTS § 218 cmt. a (1979). It further explains that an integrated agreement "does not establish fictitious events." *Id.* at cmt. a. However, "[a] recital of fact

13

in an integrated agreement is evidence of the fact, and its weight depends on the circumstances. Contrary facts may be proved." *Id.* at cmt. b. *See also In re GGSI Liquidation Inc.*, 351 B.R. 529, 565 (Bankr. N.D. Ill. 2006) (summarizing Illinois law on recitals and applying § 218 of the Restatement to examine whether recitals of fact in repurchase agreement were accurate).

Winter's and Sumner's efforts to enforce the Buy-Sell Agreement run into additional problems. They admit that no shares were ever issued, that Hoffman never took any action to hold shares in trust or anything else contemplated in the 1993 Buy-Sell Agreement. They argue that DAI (and by implication the later formed corporations) were bound by Hoffman's agreement, which they say is reflected in the Buy-Sell Agreement, but the agreement itself says it is binding only on the individual signers, their assigns, heirs, etc. It does not purport to be binding on DAI or any other of the corporate parties to this suit. Accordingly, Winter's and Sumner's claims are limited to ones for breach of contract, breach of fiduciary duty, and perhaps fraud against Hoffman, or in this case, his estate, as reflected in counts 3 (breach of contract), 4 (fraud) and 5 (breach of fiduciary duty) of their counterclaim.

Christi Hoffman, as executor, argues that these claims are barred by the statute of limitations. The statute of limitations for fraud in Illinois is five years. It is ten years for breach of

14

a written contract, 735 ILCS 5/13-206, and five years for breach of an oral agreement, 735 ILCS 5/13-205. In this case, the agreement alleged is part oral (that Hoffman would make Winter and Sumner each one-third owners in DAI in return for their agreement to help him with the company, and would issue each of them 250 shares of stock in the company), and part written (that he would hold the stock in trust for their benefit).[6] Thus, the five year statute of limitations is applicable. *Armstrong v. Guigler*, 220 Ill. Dec. 378, 174 Ill.2d 281, 673 N.E.2d 290 (1996). Even if the contract in question is regarded as the written August 1993 Buy-Sell Agreement, since it is undisputed that the stock certificates referred to in Part IV of the agreement did not exist (and never existed), it is clear that parol evidence would be necessary to understand the agreement. Accordingly, the five year statute of limitations is still applicable. *Id.*

Winter and Sumner testified that the oral agreement to form the company, with the three as shareholders, was reached in "early 1993." The written Buy-Sell Agreement was executed sometime in August 1993. This action was brought in November 2005. Winter and

---

[6] Indeed, Winter and Sumner allege, and therefore admit, in paragraph 69 of their second amended counterclaim, that "pursuant to oral agreements between Hoffman, Winter, and Sumner, ... Winter and Sumner are each the rightful owner of 1/3 of the shares of DAI." They do allege that their oral agreements – described by them as documents apart from the Buy-Sell Agreement – were memorialized in writings but there is no evidence on the motions for summary judgment to support this claim.

15

Sumner argue that the statute of limitations did not begin to run until sometime in 2005 when they learned that Christi Hoffman, as executor of Hoffman's estate, was not going to turn over the company to them. But the breach of duty, if there was one, occurred years before Hoffman's death, because Hoffman never caused DAI to issue any stock in either Winter or Sumner's name. They argue that Hoffman defrauded them in failing to issue shares in their names. Whether termed fraud, breach of oral contract, or failure of fiduciary duty, the acts or failure to act, took place presumably in 1993. Even a ten year statute of limitations had run before November, 2005 when plaintiffs filed suit seeking a declaratory judgment that they owed nothing to Winter and Sumner, and the five year statute of limitations had run years before Hoffman's death.

Winter and Sumner argue that they are excused from filing suit earlier because they were repeatedly assured by Hoffman that he was holding the shares for them. However, any alleged response by Hoffman to their inquiries is barred from consideration by the Illinois Dead Man's Act, 735 ILCS 5/8-201, which provides that "in the trial of any action in which any party sues or defends as the representative of a deceased person ... no adverse party or person directly interested in the action shall be allowed to testify on his ... own behalf to any conversation with the deceased ... or to any event which took place in the presence of the deceased ...."

Their admissions in depositions that they had enough concern that they did ask about the stock are, however, admissible.  There is other evidence.  Winter also testified that at least twice, in 1993 and 1994, when he allegedly asked for his stock certificate, Hoffman stated that he would send it to him, yet Winter did not receive it.  After the alleged oral agreement between the three, in early 1993, Sumner and Winter received copies of the DAI incorporation documents, which, among other things, showed that the corporation had been incorporated, with 250 shares of stock issued, to John and Christi Hoffman, in joint tenancy.  They also learned the name of and how to contact DAI's corporate counsel.  They knew that annual reports of the corporation were publicly available, which over the years reflected no change in the paid-in capital or outstanding stock.  Due to his position at the company he worked for, which sold product to DAI, Winter saw financial statements from DAI for several years after 1993; these continued to list the paid-in capital as $2,500.00, the amount stated when the company was incorporated.  Neither defendant ever received notice of an annual meeting.  (Although they argue that there were none, the point is that they received no notice of any such meetings, and never inquired.)  Winter and Sumner each (apparently mistakenly) thought that DAI was a Sub-chapter S corporation, and yet never inquired as to why they received no corporate tax returns, showing

the amount of income they, as purported shareholders, needed to report to the Internal Revenue Service.

Winter and Sumner argue that, however it looks, the question of whether they knew or should have known of their injury, and thus were obligated to file suit earlier, is always a question of fact. But in this case that would require a conclusion that although all of the admissible evidence is that Hoffman never did anything in furtherance of either the alleged pre-incorporation agreement or the Buy-Sell Agreement, Winter and Sumner could do nothing and wait until months after Hoffman died, and only when the company was not turned over to them, claim that the statute of limitations on an oral and written agreement had just begun to run. The question of whether a statute of limitations has begun to run is for the court where only one conclusion can be drawn. *LeBlang Motors, Ltd. v. Subaru of America, Inc.,* 148 F.3d 680, 691, n. 6 (7th Cir. 1998). In this case, I conclude that the undisputed evidence put Winter and Sumner on notice at least by sometime in 1995 that Hoffman had decided not to issue stock in DAI to them, nor then necessarily to hold such stock in trust. By that point, each knew that he had not received any stock certificates, at least one of them had at least twice not received certificates when requested, sufficient time had passed that if they were shareholders in a Sub-chapter S corporation, they should have inquired as to corporate tax returns, and publicly available information would have shown them that not

a single corporate record identified anyone other than Hoffman and his wife as owning the company. Even if Winter and Sumner could be excused from inquiring further to determine if there had been a breach of agreement until some later date, that date cannot be pushed forward to a time within five years of the date that plaintiffs filed their declaratory judgment action.

III.

For the reasons stated in this opinion, I grant plaintiffs' motions for summary judgment and enter judgment in their favor.


                                        **ENTER ORDER:**

                                        **Elaine E. Bucklo**
                                        United States District Judge

Dated: March 3, 2008